------------------------------------------------------------- X

KEITH ARMSWORTH,         :
                   :
         Petitioner,  :
                   :  MEMORANDUM
                   :  AND ORDER
   - against -         :
                   :
HAROLD GRAHAM, Superintendent,  :  07 CV 3727 (JG)
Auburn Correctional Facility       :
                   :
         Respondent.  :

------------------------------------------------------------- X

A P P E A R A N C E S :

  KEITH ARMSWORTH
    03A6548
    Auburn Correctional Facility
    P.O. Box 618
    135 State Street
    Auburn, NY 13024
    Petitioner, *pro se*

  ANDREW CUOMO
    New York State Office of the Attorney General
    120 Broadway, 22nd Fl.
    New York, NY 10271
  By: Alyson J. Gill
    Leilani Rodriguez
    Attorney for Respondent

JOHN GLEESON, United States District Judge:

    Keith Armsworth, a prisoner incarcerated in the Auburn Correctional Facility pursuant to a judgment of the New York State Supreme Court, Queens County, petitions for a writ of habeas corpus under 28 U.S.C. § 2254. Warren challenges his conviction following a jury trial of two counts of robbery in the first degree, four counts of robbery in the second degree, one count of criminal possession of stolen property in the fourth degree, and one count of

1

criminal possession of stolen property in the fifth degree. He seeks habeas relief on the three grounds discussed below. For the reasons set forth below, the petition is denied.

BACKGROUND

A.  *The Offense Conduct*

The government's evidence at trial established that just after midnight of March 9, 2002, Victor Budhoo and his friend Ramarine Singh were leaving the Golden Arrow Bar on the corner of 101st Avenue and 108th Street in Queens. They were approached by four or five men, including Armsworth. Armsworth struck Budhoo on the head with a baseball bat as one of Armsworth's accomplices stole Budhoo's wallet from his pocket. Armsworth and his accomplices then surrounded Singh and demanded that he turn over his wallet to them. Singh refused, and Armsworth hit Singh on the head with the baseball bat three times before taking his wallet and cell phone and fleeing the scene.

Budhoo and Singh got into Singh's car and pursued Armsworth and his accomplices. On 108th Street they encountered a marked patrol car. They told Police Officers Mastrande and Fox what had just occurred. The officers led Budhoo and Singh back to the scene of the crime, where Singh provided them with Armsworth's direction of flight as well as a description of him ("a male black, dark skin, wearing dark clothing"). Mastrande and his partner went looking for the robber and spotted Armsworth, who fit that general description, about three-quarters of a block from the scene. Upon spotting the police, Armsworth veered into a driveway. The police promptly detained him for a show-up. Singh was brought to the location, and he positively identified Armsworth as the perpetrator. Armsworth was arrested, and a search of his person yielded Singh's credit card, cell phone, over a hundred dollars in cash, and an imitation silver firearm. Later that morning, Officer Rottas spoke to Armsworth and advised him of his

2

*Miranda* rights. He waived his rights, and thereafter admitted in a written statement that he was at the scene of the robbery but did not participate in the robbery or assault of the victims.

B.   *The Procedural History*

   1.   *The Trial Court Proceedings*

Armsworth was charged in an indictment with two counts of robbery in the first degree, four counts of robbery in the second degree, one count of criminal possession of stolen property in the fourth degree, and one count of criminal possession of stolen property in the fifth degree. Armsworth moved to suppress the identification testimony, the physical evidence recovered from the search, and Armsworth's written statement. A hearing was held, after which the hearing court denied his motion, finding that the police had reasonable suspicion to detain Armsworth for a show-up, that the search was incident to a proper arrest (supported by probable cause once Singh identified Armsworth), and that he had knowingly and voluntarily waived his *Miranda* rights.

The jury found Armsworth guilty on all counts, and on December 2, 2003, he was sentenced as a second felony offender to concurrent prison terms of fifteen years on each of the first degree robbery convictions, ten years on each of the second degree robbery convictions, two to four years on the fourth degree criminal possession of stolen property conviction, and one year on the fifth degree criminal possession of stolen property conviction.

   2.   *The Direct Appeal*

On appeal to the Appellate Division, Second Department, Armsworth argued that (1) he was denied due process because the police lacked reasonable suspicion to detain him for the show-up; (2) his guilt was not proven beyond a reasonable doubt and the verdict was against the weight of the evidence; and (3) the prosecutor, during summation, improperly equated mere

3

presence with guilt under an acting in concert theory. On March 14, 2006, the Appellate Division affirmed the convictions, holding that under the totality of the circumstances, there was reasonable suspicion to detain Armsworth and that the show-up was not unduly suggestive. *People v. Armsworth*, 813 N.Y.S.2d 100, 101 (2d Dep't. 2006). The court found Armsworth's remaining two contentions to be unpreserved for appellate review and without merit. *Id.* Armsworth sought leave to appeal, and the New York Court of Appeals denied that application on June 14, 2006. *People v. Armsworth*, 7 N.Y.3d 752 (2006) (Read, J.).

3.  *The Instant Petition*

In the instant petition, dated August 31, 2007, Armsworth seeks relief on the same grounds he raised on direct appeal.

## DISCUSSION

A.  *Standard of Review*

1.  *AEDPA Deference*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions where the state court has adjudicated a petitioner's federal claim on the merits. 28 U.S.C. § 2254(d). Under the AEDPA standard, the reviewing court may grant habeas relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

The Supreme Court has interpreted the phrase "clearly established Federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of

the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *see also Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)).

Under the "unreasonable application" standard set forth in *Williams*, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist*, 260 F.3d at 93 (citing *Williams*, 529 U.S. at 411). Interpreting *Williams*, the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* at 93 (citing *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

5

This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. As the Second Circuit stated in *Sellan v. Kuhlman*:

> For the purposes of AEDPA deference, a state court "adjudicate[s]" a state prisoner's federal claim on the merits when it (1) disposes of the claim "on the merits," and (2) reduces its disposition to judgment. When a state court does so, a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim -- even if the state court does not explicitly refer to either the federal claim or to relevant federal case law.

261 F.3d 303, 312 (2d Cir. 2001).

2. *Procedural Default*

Where there has been actual and explicit reliance upon procedural default to dispose of a claim in state court, there is an "adequate and independent state ground" for the judgment, prohibiting federal habeas review. *Harris v. Reed*, 489 U.S. 255, 261 (1989); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995); *see also Coleman v. Thompson*, 501 U.S. 722, 744, 750 (1991) (noting the state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having the opportunity to correct [their] own errors"); *but see Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002) (noting the existence of a "small category" of "exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question").

Where the state appellate court rejects a state prisoner's claim as procedurally defaulted, the claim may be considered on federal habeas review only upon a showing of cause and prejudice, or upon a showing that a miscarriage of justice will result if the claim is not reviewed. *Coleman*, 501 U.S. at 750; *Teague v. Lane*, 489 U.S. 288, 298 (1989). A petitioner may establish cause by showing "'that the factual or legal basis for a claim was not reasonably

6

available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Coleman*, 501 U.S. at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). To satisfy the prejudice requirement, the alleged error must have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

If the petitioner cannot show cause and prejudice, his procedural default may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, *i.e.*, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This fundamental miscarriage of justice exception to the procedural default rule is "extremely rare," and should be applied only in "extraordinary circumstances." *Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003) (citing *Schlup*, 513 U.S. at 321-22).

B.   *Armsworth's Claims*

   1.   *The Fourth Amendment Claims*

Armsworth claims that his rights under the Fourth Amendment were violated when the police detained him in order to conduct a show-up. He argues that as a result of the illegal seizure, the show-up, the subsequent arrest and the search of his person were tainted, and the fruits of the search were inadmissible at trial as evidence against him. Because Armsworth had a full and fair litigation of this issue in state court, and because his claim has no merit, I cannot grant habeas relief.

Fourth Amendment claims cannot be raised on habeas review when an opportunity for a "full and fair litigation" has been provided in state court. *Stone v. Powell,* 428 U.S. 465, 466 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). The Second Circuit has already determined that New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10*,* is adequate. *See Cappelan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992); *Taylor v. Kuhlmann*, 36 F.Supp.2d 534, 549 (E.D.N.Y.1999).

The state court conducted a suppression hearing and found that there was no basis for suppressing any of the evidence gathered as a result of the show-up identification procedure. The hearing court properly concluded that the officers had reasonable suspicion to detain Armsworth for a show up. Hr'g Tr. 54. Though show-ups are the most suggestive of the typical identification procedures, they are not always unnecessarily suggestive, especially where, as here, they occur in both close temporal and physical proximity to the crime. *See, e.g.*, *McBride v. Senkowski*, No. 98-cv-8663, 2002 WL 523275, at *5 (S.D.N.Y. Apr. 8, 2002) (citing cases); *Jamison v. Grier*, No. 01-cv-6678, 2002 WL 100642, at *21 (S.D.N.Y. Jan. 25, 2002) (holding that a show-up was not unnecessarily suggestive when the perpetrator was arrested two blocks from the scene of the crime and shown (in handcuffs) to the eyewitness for identification just a few minutes after the crime had been committed) (internal quotation omitted).

Indeed, stops based on reasonable suspicion are limited in scope, and there is no reason to believe that a line-up could have been arranged without exceeding the permissible bounds of the investigative detention. Finally, upon Singh's positive identification, the court

concluded, "the police had probable cause to arrest him . . . [and] would have been remiss if they failed to do so." Hr'g Tr. 55. The Appellate Division affirmed, noting that the "defendant essentially matched the general description . . . . Given the totality of the circumstances, the police had reasonable suspicion to briefly detain the defendant pending a show-up identification." *People v. Armsworth*, 809 N.Y.S.2d 914 (2d Dep't 2006).

Armsworth argues that the state court erred in its determination that the officers had reasonable suspicion to detain him because Singh described the perpetrator as a "dark skin[ned]" black male, and the hearing court observed that Armsworth is not "dark-skinned." Hr'g Tr. 50. I disagree. As the hearing court found, Singh had not provided the officers with much of a description, but given the circumstances, particularly the closeness in time and space with the crime, the police "certainly had reasonable suspicion and grounds to detain [Armsworth] for the purpose of the show up." Hr'g Tr. 54. In any event, Armsworth had a full and fair opportunity to litigate these claims before the hearing court and on appeal. For that reason and because the state court's determination was reasonable in light of the totality of the circumstances, habeas relief is unavailable on this ground.

2. *Sufficiency Claim*

Armsworth contends that the prosecution failed to prove beyond a reasonable doubt the elements of second-degree burglary because neither Singh nor Budhoo made an unequivocal in-court identification of Armsworth as the perpetrator, and thus the jury's verdict rested on Singh's show-up identification alone. Armsworth raised this claim on direct appeal, and the court concluded that the "prosecution established guilt beyond a reasonable doubt and the verdict of guilt was not against the weight of the evidence." *Armsworth,* 809 N.Y.S.2d at 914.

A habeas petitioner "challenging the sufficiency of the evidence bears a very heavy burden." *Einaugler v. Supreme Court*, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks omitted). A state criminal conviction will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making this assessment, a court may neither "disturb the jury's findings with respect to the witnesses' credibility," *United States v. Roman*, 870 F.2d 65, 71 (2d Cir. 1989), nor "make credibility judgments about the testimony presented at petitioner's trial or . . . weigh conflicting testimony." *Fagon v. Bara*, 717 F. Supp. 976, 979 (E.D.N.Y. 1989) (citing *United States v. Zabare*, 871 F.2d 282, 286 (2d Cir. 1989)). Under this "rigorous standard," a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326).

In this case, when the evidence is viewed in the light most favorable to the government, it is clear that a rational trier of fact could have found that even though Singh failed to make an unequivocal in-court identification,[1] the show-up identification along with the other evidence presented by the prosecution at trial established Armsworth's guilt beyond a reasonable doubt. Specifically, there was sufficient evidence for a reasonable jury to find that all the elements of the highest count -- robbery in the first degree -- were satisfied: Armsworth had forcibly stolen property from Singh and Budhoo, and in the course of doing so used or threatened to use a dangerous instrument. N.Y. Penal Law § 160.15(3). That evidence included: (1)

---

[1] The closest Singh came to identifying Armsworth at trial was his testimony that the robber "look[ed] like" the defendant. Trial Tr. 42.

10

Armsworth's written statement admitting his presence at the scene of the robbery; (2) Mastrande's testimony that Singh immediately and unequivocally identified Armsworth as the perpetrator at the show-up; (3) Singh's testimony of the events of March 9, 2002 and that he knew Armsworth from the neighborhood; and (4) Singh's cell phone and credit card recovered from Armsworth's wallet and pocket.

In sum, the state court's rejection of Armsworth's sufficiency claim was not contrary to or an unreasonable application of federal law.

### 3. *The Prosecutor's Summation*

Armsworth contends that the prosecutor violated his due process rights during summation by equating mere presence with guilt under an acting in concert theory and by vouching for the credibility of one of her witnesses. The state court found these claims "unpreserved for appellate review and, in any event, are without merit." *Armsworth*, 809 N.Y.S.2d at 914. As such, the claim is procedurally barred, for Armsworth has failed to demonstrate cause for the default, prejudice therefrom or that a miscarriage of justice would result if the due process claim were not reviewed here. And in any event, the claim is meritless because any possible prejudice to Armsworth was avoided by the trial court's curative instruction.

Habeas relief based on a claim of prosecutorial misconduct during the opening statement and summation is unavailable unless the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *see also Pimentel v. Walsh*, No. 02 Civ. 570, 2003 WL 22493451, at *7 (S.D.N.Y. Nov. 4, 2003) ("To obtain relief on a prosecutorial misconduct claim, a habeas petitioner must show that 'the prosecutor engaged in egregious misconduct . . .

11

amounting to a denial of constitutional due process.'" (ellipsis in original) (quoting *Floyd v. Meachum*, 907 F.2d 347, 353 (2d Cir. 1991))). A petitioner "must demonstrate that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict." *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). In making this determination, the habeas court should consider the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of conviction absent the prosecutor's remarks. *Id.*

Armsworth's claim that he was deprived of due process because of the prosecutor's improper statements during summation is without merit. The trial judge did call a sidebar conference after the prosecution stated in summation,

> [E]ven if we were to believe the defendant's story that not only was he not the man with the bat but he wasn't one of the people who were surrounding the victim insuring that the victims could not escape -- let's take the extreme, the defendant's implausible version of his role in this crime -- even if he were truly on sideline as he claims to be . . . even if he was truly on the sideline as he claims he was and not surrounding the victim, he shows his intent to assist his friend in perpetrating the robbery by taking the proceeds of the robbery so they wouldn't be found on [his accomplice].

Trial Tr. 332-33. To prevent any possible prejudice stemming from these remarks, the judge later provided an instruction that

> to be found to be acting in concert you have to find that the defendant had the intention, the mental state, to commit the crimes and that he intentionally aided the other people in the commission of the crime. Mere presence at the scene is not sufficient to establish acting in concert, merely being associated with other people is not enough. You have to have the mental state to commit the crime and intentionally aided its commission.

12

Trial Tr. 361. The prosecutor's statement was misleading, but the overwhelming evidence against Armsworth, combined with the curative instruction, precluded the possibility of prejudice to the petitioner. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 644 (1974) ("Although some occurrences at trial may be too clearly prejudicial for such a curative instruction to mitigate their effect, the comment in this case is hardly of such character.").

Armsworth also argues that the prosecutor vouched for Singh's credibility when she stated that he was "a man of integrity" and "takes his responsibility as a witness seriously." Trial Tr. 310. But there is nothing inappropriate in such argument, and in any event, a habeas claim based on improper vouching for a witness does not present a federal constitutional claim. *See Hodge v. Henderson*, 761 F. Supp. 993, 1008 (S.D.N.Y. 1990); *Snow v. Reid*, 619 F. Supp. 579, 582 (S.D.N.Y. 1995) ("The concept of bolstering really has no place as an issue in criminal jurisprudence based on the United States Constitution.").

## CONCLUSION

For the foregoing reasons, the petition is denied. As Armsworth has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
November 27, 2007

13